498 A.2d 919

**Robert C. ROHRER, Appellant,**

v.

**Loretta L. ROHRER.**

Superior Court of Pennsylvania.

Submitted June 13, 1985.

Filed Sept. 13, 1985.

470

Arthur L. Gutkin, Philadelphia, for appellant.

Bruce Goldenberg, Philadelphia, for appellee.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

POPOVICH, Judge:

This is an appeal from an order of the trial court which denied the petition to confirm custody which was filed by appellant-father, Robert C. Rohrer, against his former spouse, appellee-mother, Loretta L. Rohrer. We affirm.

The basic facts are undisputed and were set forth adequately by the trial court as follows:

The parties were married in St. Petersburg, Florida, on August 31, 1979. Two children were born during the marriage; Mya, on January 9, 1981, and Joshua, on March 15, 1983. The parties lived in St. Petersburg from the date of the marriage until May 7, 1984, when appellant left without notice and took the children with him to reside with his parents in Ardsley, Pennsylvania.

On May 29, 1984, appellee filed for divorce in Florida. Service was made on appellant shortly thereafter. However, appellant did not enter an appearance in the action. Pursuant to an order of the court in Florida, the marriage was dissolved and appellee was awarded custody on July 31, 1984.

On July 17, 1984, appellant filed the instant action to confirm custody. Appellee traveled from Florida to attend a hearing before a custody conciliator on September 12th. At that time, appellee also requested a hearing on the issue of jurisdiction. The trial court held a hearing that same day "since the issue of jurisdiction appeared to have merit"[1] under the Uniform Child Custody Jurisdiction Act. See the Act of October 5, 1980, P.L. 693, No. 142, § 201(a), 42 Pa.C.S.A. § 5341, et seq. The trial court concluded that jurisdiction was vested in the courts in Florida and ordered

---

1. Trial Court's Opinion at pg. 2. We note that appellee has not filed a brief in the instant case with this Court.

the father to return the children to the mother's custody in Florida. This appeal followed.

Appellant raises the following two issues: (1) whether the trial court erred in not requesting the appellee to file responsive pleadings and thereafter allow the appellant time for discovery as requested so that the court may determine properly all of the facts and circumstances surrounding the welfare of the children; and (2) whether the trial court erred in ruling that jurisdiction was proper in the state of Florida rather than in the Commonwealth of Pennsylvania and also in directing that the mother should be awarded custody of the children per the Florida court order. We must reject appellant's contentions.

█ With respect to appellant's contention that the court should have granted him time for discovery, Pa.R.C.P. 4001 provides for the following:

### DEPOSITIONS AND DISCOVERY

Rule 4001. Scope. Definitions

(a)(1) The rules of this chapter apply to any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules including any action pursuant to the Eminent Code of 1964 or the Municipal Claims Act of 1923.

(2) These rules *shall not apply to an action for divorce or for annulment of marriage, an action for support, or an action for custody of minor children* except to the extent prescribed by the rules governing those actions.... (Emphasis added). *Accord* Pa.R.C.P. 1915.5(c) (In custody cases, "[t]here shall be no discovery unless authorized by special order of court".)

Additionally, the explanatory comments to Rule 4001 state:

The amendment excludes any automatic right to discovery in support proceedings. The vast majority of support proceedings involve wage earners of relatively modest means. The present intake and conference procedures and questionnaires to employers supply the basic

discovery needed as to earnings. The parties are generally familiar with the extent of each other's finances. Further discovery will not be needed in routine cases. To avoid the possibility of a defendant spouse using discovery as a tool for harassment, abuse and delay, the amendment requires leave of court in all support proceedings. This should be freely given where it is essential to a just disposition of the matter.

*Proceedings for custody of minor children are subject to the same provision for leave of court.* (Emphasis added)

Thus, it is clear that appellant is not entitled as of right to discovery in this action.

Appellant contends, however, that the trial court erred because "without responsive pleadings being filed by Appellee in the Court below, there is no way upon which issues can be framed by the appellant nor for this Court to make a proper determination." Brief for Appellant at 9. We must disagree.

Under Section 5366 of the Uniform Child Custody Jurisdiction Act, "reasonable notice and opportunity to be heard shall be given to the contestants...." Additionally, when a "question of existence or exercise of jurisdiction" is raised, that case "shall be given calendar priority and handled expeditiously." 42 Pa.C.S.A. § 5366.

Although a different rule states that "[a] party must raise any question of jurisdiction of the person or venue by preliminary objection filed within twenty days," [2] we find that the trial court's waiver of this particular rule was not an abuse of discretion since the question of jurisdiction was a matter of importance which had priority. *See Cynthia H. v. Milton M.*, 328 Pa.Super. 332, 337, 476 A.2d 1357, 1359 (1984) ("a lower court will not be reversed either for waiving or refusing to waive noncompliance with procedural rules in the absence of showing of an abuse of discretion which has caused manifest and palpable injury to the com-

2. Pa.R.C.P. 1915.5(a).

plaining party.") Additionally, appellant has failed to allege how he was prejudiced by the lack of responsive pleading other than to state in the abstract that "there is no way upon which issues can be framed by the appellant nor for this Court to make a proper determination." Brief for Appellant at 9.

Finally, a review of the record establishes that appellant and appellee were able to present witnesses in order to ascertain whether jurisdiction existed in the courts in Pennsylvania.

■ Appellant next argues that jurisdiction was proper in the state of Pennsylvania and that the trial court erred in deciding that the Florida courts had jurisdiction of the case. We disagree.

Under the Uniform Child Custody Jurisdiction Act, the question of jurisdiction is based upon the following factors:

### § 5344. Jurisdiction

**(a) General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care,

protection, training, and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) **Physical presence insufficient.**—Except under subsection (a)(3) and (4), physical presence in this Commonwealth of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

(c) **Physical presence unnecessary.**—Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

42 Pa.C.S.A. § 5344.

Additionally, the "home state" has been defined in the following manner:

**"Home state."** The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months, and in the case of a

child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Briefly, these bases for jurisdiction have been characterized as "(1) 'home state' jurisdiction, (2) jurisdiction founded upon 'significant contacts' among the parties to the custody action and the locale in which the action has been brought, and (3) 'parens patrie' jurisdiction for those situations where a child is abandoned, abused or dependent. *Warman v. Warman*, 294 Pa.Super. 285, 293, 439 A.2d 1203, 1207 (1982)."[3] *Tettis v. Boyum*, 317 Pa.Super. 8, 13–14, 463 A.2d 1056, 1059 (1983) (footnote omitted).

In the instant case, the trial court made the following conclusions:

As noted above Mr. Rohrer left the marital residence on May 7, 1984 and filed his petition on July 17, 1984, a mere ten weeks after arriving in Pennsylvania. Therefore, it is clear this court does not have "home state" jurisdiction.

As to the second basis for jurisdiction, the evidence shows unmistakably that jurisdiction based on "significant contacts" is also lacking. During the hearing Mr. Rohrer testified that he had not lived in this Commonwealth since 1978. He also stated that except for six weeks in 1982, when Mya visited with his parents, neither child has ever spent any time in this state. [*]

[*] Mr. Rohrer complains on appeal that he was prejudiced at the hearing because he was not given time to undertake discovery in order to establish the necessary contacts. However, by his own testimony it is clear that he could not have satisfied this basis for jurisdiction regardless of how much time he had been given.

Trial Court Opinion. (Footnote included)

Against this background, we must examine the record below.

During the evidentiary hearing, appellee's attorney articulated the following position:

3. The third basis for jurisdiction is not at issue in this case.

MR. GOLDENBERG: Your Honor, on the issue of jurisdiction, I have several points I want to make.

Basically the situation which is before Your Honor right now is the very reason why the Uniform Custody Jurisdiction Act was enacted; to prevent situations where the parent takes two of the children, goes halfway across the country and picks a county that has absolutely no contact at all with the children and the other parent has to go chasing across the country and litigate the issue in that county.

I would initially point out to Your Honor in Section 5342 some of the purposes of the Act.[4] Subsection 3 is to assure the litigation concerning the custody of the child takes place in the state where the family and the children have the closest connection.

4.  Section 5342 reads as follows:
    **§ 5342.  Purposes and construction of subchapter**
    **(a) Purposes.**—The general purposes of this subchapter are to:
       (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
       (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.
       (3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
       (4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
       (5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
       (6) Avoid relitigation of custody decisions of other states in this Commonwealth insofar as feasible.
       (7) Facilitate the enforcement of custody decrees of other states.
       (8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this Commonwealth and those of other states concerned with the same child.
    **(b) Construction.**—This subchapter shall be construed to promote the general purposes stated in this section.

Neither one of these children had any connection with Montgomery County, Pennsylvania, until May 7th of this year when they were brought here.

Section 5342, Subsection 5, another purpose of the Act is to deter abductions and other unilateral removals of the children.

Well, that's exactly what happened here.

Now, I would also, with reference to the contacts of the children, I would cite Your Honor to 5349 of the Act, jurisdiction declined by reason of conduct.[5]

If the petitioner for a decree has wrongfully taken the children from another state, and has engaged in conduct intending to benefit his position, the Court may decline to exercise jurisdiction. And furthermore Subsection B, that the Court shall not exercise its jurisdiction to modify a decree of another state if the petitioner, without the consent of the person, has improperly removed the children from the physical custody.

I think what the petitioner is attempting to do here, Your Honor, is that there was a wrongful removal in May, and then from May until September saying now the children have contact. Because the children have been here for three or four months.

I think the way the Act is written, and I think the reason for the Act, is I don't think the petitioner should be allowed to benefit by his wrongful conduct. To take the children to a state, let the children live there three or four months and say, now this state should decide the issue, because the children have been here, I think this situation is the very reason why the Act was enacted.

Mr. Rohrer[, appellant,] has every right to petition for custody, to modify the Custody Order, to vacate the Custody Order. The only question which I believe is before this Court is which Court should hear that petition.

Montgomery County, Pennsylvania, that has no real contact with the parties and the children, or Pinellis County, Florida, the county that entered the order, any

5. See *infra* at pp. 478–480.

witnesses in a custody hearing would necessarily be in that county, and that's where the proceedings should take place.

And I think that under the Act this Court is obligated to enforce the Pinellis County Order, as if it was a Montgomery County Order, and suggest to the petitioner that any modification of that order be addressed to the Pinellis County Court. Thank you.

Evidentiary Hearing at 39–42.

At the conclusion of the hearing, the trial court stated that he agreed with appellee's attorney that "this is the precise purpose of this Act, to avoid this kind of thing." *Id.* at 50.

Under the law, a trial court need not exercise jurisdiction under the following circumstances:

(b) Restriction on modification of foreign decree.—Unless required in the interest of child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction unless the petitioner can show that conditions in the custodial household are physically or emotionally harmful to the child, the burden of proof being on the petitioner requesting the court to take jurisdiction.

42 Pa.C.S.A. § 5349.

Because the record indicated that appellant removed the children without the consent of appellee who had been granted custody under Florida law, the trial court in Pennsylvania acted properly in not exercising jurisdiction in this case. Additionally, even appellant admitted at the hearing that appellee "took care of the children." Evidentiary

Hearing at 37. Thus, under these circumstances, appellant is not entitled to relief.

Appellant essentially contends that because significant contacts with the state of Pennsylvania existed, the case of *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056 (1983) controls the instant appeal.

In *Tettis,* two parties were married while both were in military forces. Two children, a daughter and son, were born to them. The parties were stationed in San Angelo, Texas in September of 1979. The wife left the family residence and established another residence in that city, and the husband received primary custody of the children. The wife visited them daily for over a year until she returned to her hometown in Elk County, Pennsylvania. The father had departed from Texas to live in California. One time, the father had delivered the children to the mother for two extended visits, once in 1981 and for four months in April, 1982. Before returning the children from their planned visit, the mother filed a custody petition under the Uniform Child Custody Jurisdiction Act.

This Court stated that "[t]his is not the first instance where this Court has been caught between two states with colorable reason to exercise jurisdiction." 317 Pa.Super. at 19–20, 463 A.2d at 1062. However, we held that it was in the best interest of the children to exercise jurisdiction in Pennsylvania because of the following:

> Although at the time of the filing of the action, Texas had continuous long-term connections to the children, that contact had come to an end. Regardless of appellant's intentions to retain Texas as his permanent domicile, the fact remained that, at the conclusion of the children's visit to appellee in July, 1982, they would have been sent to California to join appellant, who had already departed from Texas. Thus, the forum where the parties entered into the consensual divorce and custody decree would no longer be presently substantially connected with either the children or with appellant. In light of these facts, we affirm the decision of the trial judge that the best inter-

ests of the children mandated an assumption of jurisdiction herein.

*Id.*, 317 Pa.Superior Ct. at 19–20, 463 A.2d at 1062. Additionally, we concluded that the children were not retained improperly after a visit with their mother.

However, in the instant appeal, the facts of *Tettis* are distinguishable. Neither of the parties in this case are active in the military forces and subject to frequent moves. Also, we note that but for the appellant's actions in improperly retaining the children after a visit in Pennsylvania, the state of Florida would have substantial connections with the children. Accordingly, jurisdiction was declined properly by the trial court because the record showed that appellant's actions in improperly retaining the children were incongruous with the express purpose of the Uniform Child Custody Jurisdiction Act. Under these circumstances, we must affirm the order of the trial court.

Order is affirmed.